UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY, AS SUBROGEE OF ORION OFFICE REIT, INC.; <br> *Plaintiff* <br><br> v. <br><br> ZEUS PLUMBING, <br> *Defendant* | § <br> § <br> § <br> § Case No. SA-23-CV-01424-XR <br> § <br> § <br> § <br> § <br> § |

### ORDER ON MOTION FOR DEFAULT JUDGMENT

On this date, the Court considered Plaintiff's motion for default judgment (ECF No. 8). After careful consideration, the Court issues the following order.

### BACKGROUND

This insurance action arises out of a water loss at the commercial property located at 5859 Farion Drive in San Antonio, Texas (the "Property"). *ECF No. 1* ¶ 5.

Plaintiff American Home Assurance Company ("American Home") filed this action against Defendant Zeus Plumbing ("Zeus") for negligence and breach of implied warranty. *Id.* ¶¶ 6–9. Plaintiff provided commercial property insurance to Orion Office REIT, Inc. ("Orion"), which owned the covered Property. *Id.* ¶ 4.

American Home is a corporation incorporated in the state of New York with its principal place of business in New York. *Id.* ¶ 1. Zeus is a Texas business entity that formerly operated as "Zeus Plumbing, Inc.," which was incorporated in the state of Texas but forfeited its corporate status in 2019. *Id.* ¶ 2.

On January 19, 2023, Zeus's workers turned off the main water supply while repairing a leak in the parking lot of the Property. *Id.* ¶ 5. They finished the repairs and turned the Property's

water system back on later that evening. *Id.* The following morning, a leak was detected on the second floor of the building. *Id.* Orion filed an insurance claim with American Home for damages relating to the leak. *Id.* ¶ 4. American Home paid Orion for covered losses. *Id.*

In November 2023, American Home filed this action against Zeus, asserting that its workers should have inspected the Property for possible leaks after the water had been turned back on and the system pressured up alleging claims for negligence and breach of the implied warranty to perform the repairs in a good and workmanlike manner. *Id.* ¶¶ 6–9. Plaintiff alleges that it is entitled to equitable and contractual subrogation of these claims. *Id.*

On December 21, 2023, Plaintiff delivered the summons and a copy of the complaint to "Chris Bishop[,] General Manager for Zeus Plumbing authorized to receive in accordance with standard operating procedures for Frederick E. Wright III, the owner of Zeus Plumbing." ECF No. 4 at 1; ECF No. 8 ¶ 5. Zeus did not file an answer and the time to do so has expired. The Clerk entered default on February 14, 2024, ECF No. 6, and Plaintiff now moves for default judgment against Zeus, ECF No. 8.

## DISCUSSION

### I. Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

## II.     Analysis

### A.     Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

#### 1.     Subject Matter Jurisdiction

28 U.S.C. § 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

A corporation's citizenship is determined by its state of incorporation and where it maintains its principal place of business. *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (citing 28 U.S.C. § 1332(c)(1)).

American Home, a corporation, was incorporated and maintains its principal place of business in New York. ECF No. 1 ¶ 1. Thus, for diversity purposes, it is a citizen of New York.

Zeus's citizenship is more complicated due to the forfeiture of its corporate status in 2019. Without citing any authority, the complaint asserts that Zeus is citizen of Texas because it is "a Texas business entity that does not maintain a registered agent." *Id.* ¶ 2. But an entity's failure to maintain a registered agent bears on its corporate privileges under Texas law and the availability of alternative service of process on the Secretary of State, not on the entity's citizenship. *See* TEX. BUS. ORGS. CODE § 11.251(b)(1)(B) (permitting the Secretary of State to terminate a domestic entity's existence for failing to maintain a registered agent or registered officer in Texas); *id.* §

3

5.251(1)(A) (substituting the Secretary of State as a domestic entity's agent for the purpose of service of process when the entity fails to maintain a registered agent).

The citizenship of an entity that has failed to maintain a registered agent depends on its corporate form under state law. *See* FED. R. CIV. P. 17(b)(2)–(3) (a corporation's capacity to sue or be sued depends on the law of the state where it was organized; the capacity of all other entities depends on the law of the state where the court is located); *cf. Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 408 (5th Cir. 2008) ("[W]e look to Texas law to determine whether the Texas [entities] have capacity to maintain this suit.").

Although the basis for Zeus's forfeiture of its corporate status is not clear from the complaint, a Texas corporation that forfeits its corporate privileges (and fails to revive them within a three-year period) is generally "denied the right to sue or defend" in Texas courts and, in turn, federal courts. *See*. TEX. TAX CODE § 171.252. Texas law treats the entity as a partnership and imposes liability on the entity's directors and officers "in the same manner and to the same extent" as if they were partners. TEX. TAX CODE § 171.255(b); *id.* § 171.255(a).

If a firm is not a corporation under state law, its citizenship, for the purpose of assessing federal diversity jurisdiction, is determined by the citizenship of its proprietor, partners, members, or other principals. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990); *see also Sun Packing, Inc. v. XenaCare Holdings, Inc.*, 924 F. Supp. 2d 749, 755 (S.D. Tex. 2012) ("Because Sun Packing, through forfeiture of its corporate privileges, had basically become a partnership under Texas law, it should be treated as such for purposes of diversity jurisdiction.").

The complaint asserts that Frederick E. Wright III is the "owner" of Zeus but does not affirmatively allege Wright's citizenship for the purpose of establishing diversity jurisdiction. *Cf. MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("For

individuals, citizenship has the same meaning as domicile, and the place of residence is prima facie the domicile[;] an allegation of residency alone does not satisfy the requirement of an allegation of citizenship." (internal quotations and citations omitted)). Nor does the complaint explain whether Wright is the sole owner of Zeus or if there are any other principals, partners, and/or members of Zeus whose citizenship should be considered in the Court's jurisdictional analysis.

When the identities of the partners and their citizenship can be ascertained, general allegations that all members or partners are of diverse citizenship from the parties on the other side, without factual specificity, are not sufficient. *Mullins*, 300 F. App'x at 259. However, the members or partners may be unknown to the party invoking diversity jurisdiction even after a diligent investigation. In such cases, a plaintiff asserting diversity jurisdiction may allege that the defendant is not a citizen of the plaintiff's state(s) of citizenship. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3rd Cir. 2015). Before alleging that none of Zeus's partners are citizens of a particular state, a party should consult the sources at its disposal, including court filings and other public records; if, after this inquiry, the party has no reason to believe that any of the members share its citizenship, it may allege complete diversity in good faith. *Id.* at 108. In other words, a plaintiff asserting diversity jurisdiction may, after consulting all publicly available sources and determining that no member of the defendant party is likely a citizen of the same state as the plaintiff, affirmatively state the citizenship of a defendant "on information and belief." *Rollins v. Fitts*, No. 1:18-CV-198-GHD-DAS, 2019 WL 138166, at *2 (N.D. Miss. Jan. 8, 2019).

28 U.S.C. § 1653 grants courts the authority and discretion to allow parties to cure defective allegations of jurisdiction. *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 66 (5th Cir. 2010). Section 1653 should be liberally construed to allow a party to cure technical defects, including the failure to specifically allege the citizenship of the parties. *Id.*

Plaintiff is therefore **ORDERED** to file an amended complaint that adequately alleges the citizenship of the parties so that the Court may determine whether there is complete diversity **by no later than September 20, 2024.** In the interest of efficiency, the Court will address the remainder of Plaintiff's motion, including the Court's personal jurisdiction over Zeus and the sufficiency of Plaintiff's substantive claims.

### 2. Personal Jurisdiction

It appears that the Court has personal jurisdiction over Zeus, which was personally served with process in Texas in accordance with Texas law. *See* ECF No. 4 at 1; ECF No. 8 ¶ 5.

"[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Under the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m).

Rule 4(h) governs service of process on a corporations, partnerships, and associations. It provides, in relevant part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a . . . partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
>    (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
>    (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is

>one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

FED. R. CIV. P. 4(h).

Federal Rule of Civil Procedure 4(e)(1), which governs service of process on an individual defendant residing within a judicial district, provides that service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(e)(1). In turn, Texas Rule of Civil Procedure 106 permits primary service by (1) delivering to the defendant, in person, a copy of the citation and petition or (2) mailing a copy of the petition and citation to the defendant by certified or registered mail, TEX. R. CIV. P. 106(a)(1)–(2), and permits certain methods of substituted service when primary service methods prove unsuccessful, *id.* 106(b).[1]

To effect service of process on a business entity in Texas, the plaintiff must generally serve the registered agent of the entity. *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787 (S.D. Tex. 2010). The Texas Secretary of State serves as the substitute registered agent for domestic entities that fail to maintain a registered agent. *See* TEX. BUS. ORGS. CODE § 11.251(b)(1)(B) (permitting the Secretary of State to terminate a domestic entity's existence for failing to maintain a registered

---

1 Texas Rule of Civil Procedure 106(b) provides that substituted personal service may be effected: (1) by leaving a copy of the documents with anyone over sixteen years of age at the location of the defendant's usual place of business or usual place of abode as specified by affidavit, or (2) in any other manner deemed to be reasonably effective to give the defendant notice, including social media, email, or other technology. *Id.* (b)(1)–(2). Texas law prefers personal service over substituted service because greater reliability inheres in personal service. *Taylor v. State*, 293 S.W.3d 913, 915–16 (Tex. App.—Austin 2009, no pet.). Thus, only after service by one of the two methods provided in Rule 106(a) fails may a court, upon a motion supported by proper affidavit, authorize substituted service. *State Farm Fire & Cas. Co. v. Costley*, 868 S.W.3d 298, 98–99 (Tex. 1993). That affidavit must:

> [S]tat[e] the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stat[e] specifically the facts showing that service has been attempted under either (a)(1) [personal delivery] or (a)(2) [registered or certified mail] at the location named in such affidavit but has not been successful.

TEX. R. CIV. P. 106(b). Substituted service may be authorized only if the supporting affidavit "strictly complies" with Texas Rule 106(b)'s requirements. *Mockingbird Dental Grp., P.C. v. Carnegie*, No. 4:15-cv-404-A, 2015 WL 4231746, at *1 (N.D. Tex. July 10, 2015) (citing *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)).

agent or registered officer in Texas); *id.* § 5.251(1)(A) (substituting the Secretary of State as a domestic entity's agent for service of process when the entity fails to maintain a registered agent).

Rule 4 is "designed to provide maximum freedom and flexibility in the procedures for giving all defendants . . . no matter where they might be located, notice of the commencement of the action." *Fyfee v. Bumbo Ltd.*, Civil Action No. No. H-09-0301, 2009 WL 2996885, at *2 (S.D. Tex. Sept. 16, 2009) (quoting 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1061, at 11–12 (3d ed. 2002)); *Bisby v. Garza*, Civil Action No. C-07-404, 2008 WL 4179237, at *2 (S.D. Tex. Sept. 8, 2008) ("Rule 4(h) is intended to ensure that an association is on notice of a lawsuit against it: 'The principal purpose of the Rule with respect to service on an agent of the corporation or association is to render it reasonably certain that the corporation will receive prompt and proper notice in an action against it.'" (quoting 35A C.J.S. Federal Civil Procedure § 247)).

Plaintiff purportedly served Zeus via personal service on "Chris Bishop[,] General Manager for Zeus Plumbing authorized to receive in accordance with standard operating procedures for Frederick E. Wright III, the owner of Zeus Plumbing." ECF No. 4 at 1. Although the Court agrees that service on Zeus's owner (through an authorized agent) was warranted here, the forfeiture of Zeus's corporate status also appears to implicate substitute service on the Secretary of State. *See* TEX. BUS. ORGS. CODE § 5.251(1)(A).

In the interest of ensuring that Zeus "will receive prompt and proper notice" of the action against it, Plaintiff is **DIRECTED** to serve its amended complaint on Zeus by serving both (1) any owners of Zeus or (agent authorized to accept service on their behalf) and (2) the Secretary of State as Zeus's agent.

### B. Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, before issuing a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

For the reasons below, the Court concludes that the complaint satisfies the "low threshold of Rule 8" and supports entry of a default judgment. *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoted in *SEC v. McDuff*, 697 F. App'x 393, 394 (5th Cir. 2017)).

9

1.     **Right to Subrogation**

Plaintiff brings this action as Orion's subrogee. ECF No. 1 ¶ 4. Thus, the Court first considers whether Plaintiff has adequately pleaded a right to equitable and contractual subrogation.

"Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." *Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239, 245 (5th Cir. 2010) (quoting *Tex. Ass'n of Sch. Bds. v. Ward*, 18 S.W.3d 256, 258 (Tex. App.—Waco 2000, pet. denied)). "[S]ubrogation operates to reduce the insurer's risk and boost its solvency." *Concierge Nursing Ctrs., Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 44 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 650 n.53. (Tex. 2007)). "[It] is not intended to place the insurer in a position to profit from the loss." *Id.* (citing *Ward*, 169 S.W.3d at 659).

"Insurers may have either 'contractual' subrogation rights, which arise from contract language, or 'equitable' subrogation rights, which exist in equity to prevent the insured from receiving a double recovery to the insurer's detriment." *Id.* (quoting *Fortis Benefits*, 234 S.W.3d at 647).

The principle of equitable subrogation provides that "once an insured is made whole from his damages, the insurer that has paid for the insured's covered losses is entitled to the insured's rights and remedies against a third party for the covered losses." *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 78 (Tex. App.—Austin 2008, no pet.). "When an insurer pays out on its insured's loss, it becomes a 'pro tanto owner' of the cause of action." *Concierge Nursing Ctrs.*, 433 S.W.3d at 44 (quoting *Thoreson v. Thompson*, 431 S.W.2d 341, 347 (Tex. 1968)). "This means that the insurer receives the rights of its insured *to the extent of payments made under the insurance contract*." *Id.* (quotation omitted) (emphasis added).

"[C]ontract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement." *Fortis Benefits*, 234 S.W.3d at 650. Thus, if a contract provides for subrogation regardless of whether the insured is first made whole, "[t]he contract's specific language controls." *Id.* at 651.

Here, Plaintiff alleges that "[p]ursuant to the terms of the policy," it obtained "equitable and contractual rights of subrogation" for "payments [made] to the Insured for the covered loss" to the Property. *Id.* ¶ 4. The Court agrees that Plaintiff is entitled to equitable subrogation to the extent of its payments to Orion, which appear to total $407,422.10. *See* ECF No. 8-1 ¶ 7; ECF No. 8-3 (Proof of Loss). *See Farmers Ins. Co. v. Quality Truck & Trailer Repair*, No. EP-20-CV-126-PRM, 2020 WL 6269298, at *5 (W.D. Tex. Oct. 23, 2020) (granting motion for default judgment as to insurer's right to subrogation). It is not clear, however, that Plaintiff's right to equitable subrogation extends to Orion's $100,000 deductible. *See id.* Plaintiff may very well have a controlling *contractual* right to subrogation for the deductible under the terms of the Policy, but the Court is unable to evaluate the scope of any such rights because Plaintiff has not provided the Court with a copy of the Policy.

To the extent that Plaintiff asserts that it is entitled to contractual or equitable subrogation for Orion's deductible, it must explain the basis for such a right in its amended complaint, including any applicable Policy language describing the scope of Plaintiff's subrogation rights and the appropriate distribution of any proceeds arising out of this suit. The Court now turns to the sufficiency of Plaintiff's substantive claims.

11

### 2. Negligence

Plaintiff asserts a negligence claim against Zeus. Taking Plaintiff's allegations as true, the facts establish a *prima facie* negligence claim against Zeus. To state a claim for negligence, a party must plead "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).

The well pleaded facts establish that Zeus owed Orion, and Plaintiff as Orion's subrogee, a legal duty. In Texas, every contract is accompanied by a common law duty to perform with care and skill. *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (1947). Failure to meet this implied standard may provide a basis for recovery in tort, contract, or both under appropriate circumstances. *Id.* In *Chapman Custom Homes v. Dallas Plumbing Co.*, the Supreme Court of Texas held that a plumber, by having undertaken to install a plumbing system in the house, assumed an implied duty not to flood or otherwise damage the house while performing its contract. 445 S.W.3d 716, 718 (Tex. 2014).

Here, Plaintiff has sufficiently pleaded that Zeus had an implied duty to avoid damaging the Property while working on the repairs in the parking lot. ECF No. 1 ¶ 7. Zeus breached this duty by failing to enter the building to inspect it for possible leaks after the water had been turned back on and the Property's water system had been repressurized. *Id.*

Lastly, Plaintiff sufficiently alleges that Zeus's breach proximately caused the damages at issue. Proximate cause encompasses two elements: cause in fact and foreseeability. *Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 223 (Tex. 1988) (holding that an "explicit allegation of proximate cause" provides "ample notice" of the issues to be tried). Here, Plaintiff alleges that, but for Defendant's negligence, the Property would not have been damaged, and Plaintiff would

12

not have paid for the repairs to which it is now subrogated. ECF No. 1 ¶ 7. Plaintiff alleged Zeus's breach proximately caused the water loss and resulting damages to the Property because it was reasonably foreseeable that, when water to a commercial building has been off for hours, turning it back on can lead to a discharge of water in the system. *Id.*

Accordingly, the Court concludes that the complaint states a claim for negligence. In light of this conclusion, the Court need not reach Plaintiff's claim for breach of implied warranty.

### C.      Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) for the general rule that non-liquidated damages in default judgment are not awarded without evidentiary hearing). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is unnecessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See* FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court *may* conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

In its complaint, American Home sought "at least $395,000" to satisfy the damage to the Property. ECF No. 1 ¶ 11. In its motion for default judgment, American Home seeks $507,422.10 in actual damages, ECF No. 8 ¶ 8, supported by an affidavit from an insurance adjuster, ECF No.

8-1 ¶ 7, the Proof of Loss signed by Orion on May 9, 2023, ECF Nos. 8-3, and a summary of repairs and expenses incurred, ECF Nos. 8-2.

The Fifth Circuit, considering the "appropriate standard for determining whether a default judgment differs in kind from or exceeds in amount the relevant pleadings," is "convinced that the proper standard flows from the reason for the rule itself—to ensure a party pondering default has meaningful notice, based on the complaint alone, of her exposure in the event of default." *Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018); *see also Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (holding that, in the context of non-default judgments, "[t]he discretion afforded by Rule 54(c) . . . assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant"). The rationale behind Rule 54(c) is that:

> [T]he defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Naumann*, 742 F. App'x at 813 (citing 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2663 (4th ed. 2014)).

Although Plaintiff seeks the same *kind* of damages sought in its complaint, Plaintiff is not entitled to damages in the amount requested in its motion for default judgment. In the Court's view, Plaintiff's use of the "at least" language in its complaint did not give Defendant sufficient notice that it could be in default for $150,000 beyond the figure cited in the complaint. Moreover, it is unclear to the Court why Plaintiff failed to specify the total amount of actual damages in the

14

complaint, filed on November 10, 2023, when the proof of loss supporting the claim for $507,422.10 was signed on May 9, 2023. *Compare* ECF No. 1 ¶ 11 *with* ECF No. 8-3.

Finally, the Proof of Loss attached to Plaintiff's motion reflects that Orion was responsible for paying a $100,000 deductible. Although Plaintiff's submissions appear to support damages totaling $507,422.10, as previously discussed, it is not clear that Plaintiff is entitled to subrogation for the full amount of damages (including the deductible).

Plaintiff may, of course, revise its damages request to reflect the full amount in its amended complaint, along with allegations supporting is claim to subrogation for Orion's deductible.

### D.     Attorneys' Fees

Plaintiff requests attorneys' fees as a result of the breach of implied warranty claim but does not provide any argument or authority for the legal basis of its request for fees. Plaintiff's breach of implied warranty is brought under common law, not the Texas Deceptive Trade Practices statute. *See Nghiem v. Sajib*, 567 S.W.3d 718, 722 (Tex. 2019) (noting that the DTPA cause of action is separate and apart from a cause of action under the common law, with different damages and remedies including attorneys' fees). Accordingly, Plaintiff's request for attorneys' fees is denied.

### CONCLUSION

Accordingly, Plaintiff's Motion for Default Judgment (ECF No. 8) is **DENIED.**

Plaintiff is **DIRECTED** to file an amended complaint curing the deficiencies identified herein **by no later than September 20, 2024**, or seek an extension of time to do so. **Failure to timely comply with this order will result in the dismissal of this case.**

It is so **ORDERED**.

**SIGNED** this 20th day of August, 2024.

                                                                  XAVIER RODRIGUEZ
                                                                  UNITED STATES DISTRICT JUDGE